# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

**UNITED STATES OF AMERICA** *ex rel*. **CHRIS RIEDEL,** an individual,
      2605 South Winchester Boulevard
      Campbell, CA 95008

          Plaintiffs,

vs.

**HEALTH DIAGNOSTIC LABORATORY, INC.,** a Virginia corporation;
      737 N. 5th Street, Suite 103
      Richmond, VA 23219
**BLUEWAVE HEALTHCARE CONSULTANTS, INC.,** an Alabama corporation;
      307 Commercial Street SE
      Hanceville, AL 35077
and **SINGULEX, INC.,** a Delaware corporation,
      1650 Harbor Bay Parkway, Suite 200
      Alameda, CA 94502

          Defendants.

Civil Case No. _____

---

## COMPLAINT FOR MONEY DAMAGES AND CIVIL PENALTIES
## FOR VIOLATIONS OF THE FALSE CLAIMS ACT

### DEMAND FOR JURY TRIAL

### [FILED ~~IN CAMERA AND~~ UNDER SEAL
### PURSUANT TO 31 U.S.C. § 3730(b)(2)]

## TABLE OF CONTENTS

I.      INTRODUCTION.................................................................................... 1

II.     JURISDICTION AND VENUE.............................................................. 3

III.    PARTIES ................................................................................................ 3

IV.     OVERVIEW OF THE SCHEME............................................................ 4

V.      DEFENDANTS VIOLATED THE FALSE CLAIMS ACT BY PROVIDING
        KICKBACKS IN EXCHANGE FOR THE REFERRAL OF "PULL-
        THROUGH" MEDICARE AND MEDI-CAL BUSINESS.......................... 8

VI.     DEFENDANTS VIOLATED THE FALSE CLAIMS ACT BY BILLING FOR
        MEDICALLY UNNECESSARY LABORATORY TESTS ...................... 11

VII.    CAUSES OF ACTION .......................................................................... 12

        FIRST CAUSE OF ACTION
        On Behalf of the United States
        Federal False Claims Act, Presenting False Claims
        31 U.S.C. § 3729(a)(1)(A) ...................................................................... 12

        SECOND CAUSE OF ACTION
        On Behalf of the United States
        Federal False Claims Act, Making or Using False Records or Statements
        Material to Payment or Approval of False Claims
        31 U.S.C. § 3729(a)(1)(B) ...................................................................... 13

        THIRD CAUSE OF ACTION
        On Behalf of the United States
        Federal False Claims Act, Conspiracy to Commit Violations
        31 U.S.C. § 3729(a)(1)(C) ...................................................................... 14

        FOURTH CAUSE OF ACTION
        (In the Alternative)
        On Behalf of the United States
        Federal False Claims Act, Retention of Proceeds to Which Not Entitled
        31 U.S.C. § 3729(a)(1)(G) ...................................................................... 15

VIII.   PRAYER FOR RELIEF.......................................................................... 15

        DEMAND FOR JURY TRIAL................................................................ 19

Plaintiffs UNITED STATES OF AMERICA ("United States"), by and through Relator

CHRIS RIEDEL, alleges as follows:

## I.    INTRODUCTION

1.    Over the past several years, Defendants HEALTH DIAGNOSTIC

LABORATORY, INC. ("HDL"), BLUEWAVE HEALTHCARE CONSULTANTS, INC.

("BlueWave"), and SINGULEX, INC. ("Singulex") (collectively, "Defendants"), have

perpetrated a multi-million dollar fraud on U.S. taxpayers through a Medicare kickback scheme.

Defendants have provided illegal kickbacks in several forms to doctors and clinics, in order to

induce those doctors and clinics to refer Medicare business to them.  The kickbacks take the

following forms, as described in detail in this Complaint:

   a.    Defendants promise to doctors that they will never collect co-payments or patient

   deductible payments from the doctors' privately-insured patients.  This is of great

   benefit to the doctors, who are able to attract and retain the business of patients by

   promising no co-payments or patient deductible payments.  In exchange for this

   benefit, the doctors send all of their lipid-related business, including Medicare

   business, to Defendants.  As such, the waiver of deductibles and co-payments

   constitutes illegal remuneration, designed by Defendants to "pull-through"

   higher-paying Medicare business to Defendants.  Furthermore, waiving insurance

   co-payments is explicitly illegal under the laws of several states.  Lipid panels are

   among the most frequently ordered – and expensive – lab tests.

   b.    Defendants pay doctors inflated "packaging" fees for drawing blood specimens

   and packaging them for shipping.  The fees paid by Defendants far exceed the fair

1

market value of the processing, and constitute illegal remuneration designed to induce the referral of Medicare business.

c.     Defendants pay doctors to be members of their "Speakers Bureau," in exchange for the doctors' referral of all lipid-related business – including Medicare business – to Defendants.

2.     These practices constitute an illegal kickback scheme, no more legal than if Defendants simply handed doctors envelopes of cash in exchange for Medicare referrals.

3.     Additionally, Defendants systematically bill Medicare for medically unnecessary tests. Specifically, both of HDL's test bundles ("panels") include both an Apo B test, and an LDL-P test. Both of these tests measure total LDL particles. There is no medical benefit to including both of these tests since they provide the same medical information and treatment would not be affected by including both tests. Both tests are pre-selected by Defendants as part of their panels; doctors do not have the option to de-select one of the tests. Defendants then perform, and bill Medicare for, each of the tests. Each time they do so, Defendants violate the False Claims Act.

4.     Medicare is administered by the United States government, and provides health coverage to people 65 years of age and older. Medicare's soaring costs are staggering. In 2007, Medicare expenditures accounted for 16% of all federal spending – second only to Social Security and Defense. Knowing that the federal Government lacks the ability to track the massive amount of Medicare money as it flows through the complex healthcare delivery system, unscrupulous companies see Government money as an easy source for padding their profits. Sadly, Defendants have become part of this problem through their abuse of the Medicare program – a program designed to benefit senior citizens, not private companies.

5.      In engaging in these illegal practices, Defendants are not only cheating the system, but also driving competitors out of the marketplace, thereby reducing the quantity and quality of treatment options for elders.

6.      This is a *qui tam* action for violation of the federal False Claims Act (31 U.S.C. §§ 3150 *et seq.*), to recover treble damages, civil penalties and attorneys' fees and costs for Plaintiffs and on behalf of the United States for fraudulent Medicare billings.  Non-public information personally known to Relator Chris Riedel ("Riedel") serves as the basis for this action.

## II.     JURISDICTION AND VENUE

7.      This Court has jurisdiction over this action pursuant to 31 U.S.C. sections 3730(b) and 3732(a), which confer jurisdiction on this Court for actions brought under the federal False Claims Act, and authorize nationwide service of process.  Venue is proper in this district pursuant to 31 U.S.C. section 3732(a), as all Defendants transact business in the District of Columbia.

## III.    PARTIES

8.      The plaintiff in this action is the UNITED STATES OF AMERICA ("United States"), by and through Relator CHRIS RIEDEL.

9.      Relator CHRIS RIEDEL is an individual engaged in the commercial reference laboratory business.

10.     Defendant HEALTH DIAGNOSTIC LABORATORY, INC. ("HDL"), is a Virginia corporation with its principal place of business in Richmond, Virginia.  HDL is a laboratory testing company founded in or about 2008.

3

11.     Defendant BLUEWAVE HEALTHCARE CONSULTANTS, INC.

("BlueWave"), is an Alabama corporation doing business in Washington D.C., Florida, North

Carolina, South Carolina, Georgia, Texas, New Jersey, Pennsylvania, Virginia, West Virginia,

Tennessee, Mississippi, Louisiana, Alabama, and other states. BlueWave provides marketing

and sales services for HDL and Singulex. On information and belief, BlueWave was formed for

the principal purpose of providing sales and marketing services to HDL.

12.     Defendant SINGULEX, INC. ("Singulex") is a Delaware corporation with its

principal place of business in Delaware. Singulex is an in-vitro diagnostic company founded in

or about 2005, that established a CLIA testing laboratory in or about 2010.

## IV.    **OVERVIEW OF THE SCHEME**

13.     HDL and Singulex are medical laboratories that specialize in advanced lipid

testing. Advanced lipid testing helps identify coronary heart disease risk factors that standard

cholesterol and other basic blood tests do not. Advanced lipid tests tend to be more expensive

than more basic medical laboratory tests, and consequently can result in higher profit margins for

the laboratories that provide them.

14.     Because the purpose of advanced lipid testing is generally to detect, prevent, and

manage coronary heart disease, the patient population that requires the testing is largely

comprised of senior citizens covered by Medicare. On information and belief, 30% to 50% of

the tests conducted by HDL and Singulex are for patients covered by Medicare.

15.     HDL and Singulex bill and are reimbursed by Medicare a total of $1,123.65 for

the initial Comprehensive CVD Baseline Assessment panel, and $602.78 for the CVD/Metabolic

Follow-up Profile, per patient. After the initial panel, follow-up panels are often ordered four

times per year. HDL's and Singulex's profit margins on this Medicare business are

extraordinary.  Consequently, Defendants – desperate to capture and retain Medicare business – have pushed their marketing techniques into blatantly illegal territory.

16.     Specifically, in order to capture and retain Medicare business, Defendants have offered several forms of illegal remuneration to physician customers in order to induce referral of Medicare business.

17.     The first form of illegal remuneration is waiver of private insurance co-payments. A significant portion of a physician's non-Medicare patients will be covered by private insurance.  Most private insurance companies require that a patient ordering a laboratory test make a co-payment of approximately 20% of allowable charges to the laboratory.  The co-payments can be significant to patients, especially those being treated with statin therapy, who require regular medical treatment and lipid testing with attendant co-payments at least four times per year.  For example, in the case of the HDL Baseline Assessment panel, the co-payment, if charged, would be $224.73.  Accordingly, the waiver of a co-payment is a significant benefit that a physician can provide to his or her patients.  Knowing this, Defendants promise physicians that they will not collect co-payments, as long as the physicians send all of their lipid-related business – including Medicare business – to the Defendants' laboratories.

18.     The second form of illegal remuneration is waiver of private insurance deductible payments.  Most private insurance companies require that a patient ordering a laboratory test make a deductible payment to the laboratory until the patient has met his/her deductible amount each year.  The deductible payments can be significant to patients.  For example, in the case of the HDL Baseline Assessment panel, the deductible payment, if charged, would be $1,123.65. Accordingly, the waiver of a deductible payment is a significant benefit that a physician can provide to his or her patients.  Knowing this, Defendants promise physicians that they will not

5

collect deductible payments, as long as the physicians send all of their lipid-related business – including Medicare business – to the Defendants' laboratories.

19.     Though Defendants lose money on uncollected co-payments and deductibles, they more than make up the difference with the profits they earn on the Medicare referral business. This Medicare business, induced by the co-payment waiver for privately insured patients, is referred to in the industry as "pull-through" business. The majority of Medicare patients are receiving statin therapy, and therefore receive lipid testing four times per year. This amounts to annual Medicare payments of over $2,400 per patient.

20.     Waiving co-payments and deductibles in this manner, to induce the referral of pull-through Medicare business constitutes illegal inducement, strictly prohibited by the anti-kickback laws.

21.     The third form of illegal remuneration provided by Defendants to induce the referral of Medicare business is the payment to physicians of inflated "packaging" fees. When a physician orders a test for a patient, the physician can either send the patient to the laboratory to have blood drawn, or the physician can have a nurse or medical assistant in the physician's office draw the blood, after which the specimen is packaged and sent to the laboratory in a shipping package provided and paid for by the laboratory. The Defendants in this case do not have a wide network of blood draw centers, and most blood specimens are therefore drawn by the physicians who order the tests.

22.     When a physician's office draws the specimen, standard industry practice allows for the laboratory to pay the physician a nominal fee for the small amount of time it takes to draw and package the specimen. Medicare provides a $3 payment to physicians for drawing a specimen.

6

23.     According to the Department of Health and Human Services, Office of Inspector General, when a laboratory pays a referring physician for performing blood draws, and where the amount paid exceeds $3, "an inference arises that the compensation is paid as an inducement to the physician to refer patients to the laboratory." OIG Advisory Opinion No. 05-08, page 4.

24.     In this case, Defendants pay referring physicians draw and "packaging" fees that far exceed the $3 Medicare amount, far exceed standard industry practice, and far exceed fair market value. Specifically, Defendants pay "packaging" fees of more than $20-$30. Worse, Defendants pay multiple "packaging" fees per patient, rather than the industry standard of one fee per patient, regardless of the number of labs to which the test specimens are sent. The difference in the amount of time and effort that it takes to draw and package multiple specimens from the same patient, as opposed to a single specimen, is negligible; multiple specimens are drawn from the same venipuncture, and are centrifuged and packaged at the same time. Accordingly, a physician can draw four vials of blood, order four tests, ship them in four packages to Defendants, and receive an $80 "packaging" fee from Defendants – an amount that far exceeds reasonable compensation. Moreover, Defendants actively encourage physicians to order additional tests – whether medically necessary or not – in order to increase the number of "packaging" fees they receive. These "packaging" fees are pure artifice, thinly disguised kickbacks.

25.     The fourth form of kickbacks paid by Defendants are "speaking fees" paid to physicians who sign up to be part of Defendants' "Speakers Bureau." In exchange for speaking at conferences once or twice a year, if at all, referring physicians are paid thousands of dollars by Defendants. The fees paid by Defendants far exceed the fair market value of the physicians'

7

speeches, and are intended as illegal remuneration to induce the referral of physicians' Medicare and other business.

26.     In addition to providing illegal kickbacks, Defendants overcharge Medicare by systematically billing for medically unnecessary tests.  Specifically, HDL's two test bundles ("panels") include both an Apo B test, and an LDL-P test.  Both of these tests measure total LDL particles.  There is no medical benefit to including both of these tests since they provide the same medical information and treatment would not be affected by including both tests.  Both tests are pre-selected by Defendants as part of their panels; doctors do not have the option to de-select one of the tests.  Defendants then perform, and bill Medicare for, each of the tests.  Defendants charge Medicare $20.19 for the Apo B test, and $45.19 for the LDL-P test.  Each time they do so, Defendants violate the False Claims Act.

## V.      DEFENDANTS VIOLATED THE FALSE CLAIMS ACT BY PROVIDING KICKBACKS IN EXCHANGE FOR THE REFERRAL OF "PULL-THROUGH" MEDICARE AND MEDI-CAL BUSINESS

27.     Defendants violated the False Claims Act by charging Medicare for lab tests that were referred to Defendants by providers because of kickbacks offered to those providers by Defendants.  Defendants' practices are unlawful as kickback schemes, strictly prohibited by Medicare statutes.  Specifically, 42 U.S.C. § 1320a-7b(b)(2)(A) prohibits "Illegal remunerations" for "Whoever knowingly and willfully offers or pays any remuneration (including any kickback, bribe, or rebate) *directly or indirectly, overtly or covertly*, in cash or in kind to any person to induce such person  to refer an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program . . . ."  42 U.S.C. § 1320a-7b(b)(2)(A) (emphasis added).

8

28.     Interpretations of this language by the federal authorities provide useful guidance in applying these anti-kickback laws, and establish that Defendants have violated the anti-kickback laws of the United States through the conduct described herein.  For example, the federal Department of Health and Human Services, Office of the Inspector General ("OIG"), reaffirmed on May 9, 2008, that:  "[W]hen a laboratory offers or gives an item or service for free **or less than fair market value to a referral source, an inference arises that the item or service is offered to induce the referral of business**."  OIG Advisory Opinion No. 08-06.  An anti-kickback "violation arises if the discount whatever its size is **implicitly or explicitly tied** to referrals of" government-funded business.  OIG Opinion Letter, April 26, 2000.

29.     In October 1994, the OIG issued a Special Fraud Alert, entitled "How Does the Anti-Kickback Statute Relate to Arrangement for the Provision of Clinical Lab Services?"  As an example of a situation giving rise to an inference of an illegal kickback, the Special Fraud Alert cited laboratories that waive charges to providers for lab tests of managed care patients (such as the co-payments of patients here).

30.     Moreover, in June 2005, the OIG issued an Advisory Opinion concluding that payments by a laboratory to referring physicians of $6 per day for "collection of blood samples," likely constituted "prohibited remuneration under the anti-kickback statute."  OIG Advisory Opinion No. 05-08, at pp. 1-2.  Specifically, the OIG concluded that:

> **Where a laboratory pays a referring physician to perform blood draws, particularly where the amount paid is more than the laboratory receives in Medicare reimbursement, an inference arises that the compensation is paid as an inducement to the physician to refer patients to the laboratory** . . . .
>
> . . . . Because the physicians would receive a portion of the Lab's reimbursement for blood tests resulting from the physicians' referrals, **the physicians have a strong incentive to order more blood tests.  As a**

> **result, there is a risk of overutilization and inappropriate higher costs to the Federal health care programs.**

*Id.* at p. 4.

31.     The "packaging" fees paid by Defendants to referring providers in this case are no different. As in the "collection" fees paid in the Advisory Opinion's scenario, the "packaging" fee and other "compensation provides an obvious financial benefit to the referring physician, and it may be inferred that this benefit would be in exchange for referrals to the Lab." OIG Advisory Opinion No. 05-08, at p. 4. Currently, Medicare pays a $3.50 "draw fee," for collecting physicians. The "packaging" fees paid by Defendants are many multiples of this Medicare draw fee. This alone gives rise to an inference of illegal remuneration. Moreover, as in the scenario considered by the OIG's Advisory Opinion, the "packaging" fees and other remuneration provided by Defendants have the effect of incentivizing physicians to order more tests, creating a "risk of overutilization and inappropriate higher costs to the Federal health care programs." *See id.* at p. 4.

32.     Defendants violated the anti-kickback laws described in these OIG opinions by waiving co-payments and deductibles, paying referring physicians inflated "packaging" fees, and paying sham "Speakers Bureau" fees to referring physicians, and both implicitly and explicitly tying these kickbacks to the referral of Medicare business. Accordingly, Defendants violated the federal anti-kickback provisions. Defendants presented to Medicare claims for reimbursement of laboratory tests the referral of which was induced, in whole or in part, directly or indirectly, overtly or covertly, by the provision of the kickbacks described above. Each of those claims constitutes a violation of the federal False Claims Acts.

33.     At all times relevant hereto, Defendants knew that federal law prohibited their giving or receiving these kickbacks. Defendants certified, both explicitly and implicitly, that

each claim they submitted to Medicare would fully comply with all statutes and regulations,

including the anti-kickback provisions, and that as Medicare providers, they would comply with

all pertinent statutes and regulations, including the anti-kickback provisions.

34.     Each claim for payment submitted by Defendants, from at least 2009 to the

present, to Medicare that was referred to Defendants by a provider who received any of the four

forms of remuneration described above from Defendants constitutes a false claim in violation of

the False Claims Act (31 U.S.C. § 3729 *et seq.*).  Over this time period, Defendants have

submitted hundreds of thousands of such claims for payments, and received tens, if not hundreds,

of millions of dollars from the Government as a result of these illegal kickbacks.

## VI.   DEFENDANTS VIOLATED THE FALSE CLAIMS ACT BY BILLING FOR MEDICALLY UNNECESSARY LABORATORY TESTS

35.     Defendants violated the False Claims Act by submitted claims for payment for

laboratory testing services that Defendants knew were not medically necessary.  Section 1862 of

the Social Security Act provides, in pertinent part: "Notwithstanding any other provision of this

title, no payment may be made under [Medicare] for any expenses incurred for items or services .

. . which . . . are not reasonable and necessary for the diagnosis or treatment of illness or injury

or to improve the functioning of a malformed body member." 42 U.S.C. 1395y(a)(1)(A).

36.     Defendants violated 42 U.S.C. 1395y(a)(1)(A) by ordering medically unnecessary

laboratory tests.  HDL's two panels include both an Apo B and LDL-P test, however, there is no

medical benefit to including both of these tests as they provide the same medical information and

treatment is not affected by including both tests.  Additionally, Defendants' practice of pre-

selecting tests and depriving doctors of the option to de-select a test (as in the case of the Apo B

and LDL-P tests) violates established Medicare regulations as all diagnostic tests "must be

ordered by the physician who furnishes a consultation or treats a beneficiary for a specific

medical problem . . . ", 42 C.F.R. § 410.32(a), and "tests not ordered by the physician who is treating the beneficiary are not reasonable and necessary." *Id.*

37.     Medicare and other federal health care programs require as a condition of coverage that services rendered must be reasonable and medically necessary. 42 U.S.C. § 1395y(a)(1)(A). Defendants presented to Medicare claims for reimbursement of laboratory tests which were neither reasonable or necessary. As such, each of these claims constitutes a false claim in violation of the False Claims Act (31 U.S.C. § 3729 *et seq.*). Defendants certified, both explicitly and implicitly, that each claim they submitted to Medicare would fully comply with all statutes and regulations, and that as Medicare providers they would comply with all pertinent statutes and regulations.

## VII.   CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**On Behalf of the United States**
**Federal False Claims Act, Presenting False Claims**
**31 U.S.C. § 3729(a)(1)(A)**

38.     Plaintiffs incorporate by reference and reallege all of the allegations contained in paragraphs 1 through 37 of this Complaint as though fully set forth herein.

39.     Defendants knowingly (as defined in 31 U.S.C. § 3729(b)(1)) presented or caused to be presented false claims for payment or approval to an officer or employee of the United States.

40.     Defendants knowingly presented false records and statements, including but not limited to bills, invoices, requests for reimbursement, and records of services, in order to obtain payment or approval of charges by the Medicare program that were higher than they were permitted to claim or charge by applicable law. Among other things, Defendants knowingly

submitted false claims for Medicare business that was obtained by means of, and as a result of, illegal kickbacks.

41.     Defendants knowingly made, used, and caused to be made and used false certifications that their claims, and all documents and data upon which those claims were based, were accurate, and were supplied in full compliance with all applicable statutes and regulations.

42.     The conduct of Defendants violated 31 U.S.C. § 3729(a)(1)(A) and was a substantial factor in causing the United States to sustain damages in an amount according to proof.

### SECOND CAUSE OF ACTION
**On Behalf of the United States**
**Federal False Claims Act, Making or Using False Records or Statements**
**Material to Payment or Approval of False Claims**
**31 U.S.C. § 3729(a)(1)(B)**

43.     Plaintiffs incorporate by reference and reallege all of the allegations contained in paragraphs 1 through 37 of this Complaint as though fully set forth herein.

44.     Defendants knowingly (as defined in 31 U.S.C. § 3729(b)(1)) made, used, or caused to be made or used false records or statements material to false or fraudulent claims.

45.     Defendants knowingly made, used, and/or caused to be made and used false records and statements, including but not limited to bills, invoices, requests for reimbursement, and records of services, that were material to the payment or approval of charges by the Medicare program that were higher than they were permitted to claim or charge by applicable law. Among other things, Defendants made and used bills for Medicare business that was obtained by means of, and as a result of, illegal kickbacks.

13

46.     Defendant knowingly made, used, and caused to be made and used false certifications that its claims, and all documents and data upon which those claims were based, were accurate, and were supplied in full compliance with all applicable statutes and regulations.

47.     The conduct of Defendants violated 31 U.S.C. § 3729(a)(1)(B) and was a substantial factor in causing the United States to sustain damages in an amount according to proof.

### THIRD CAUSE OF ACTION
**On Behalf of the United States**
**Federal False Claims Act, Conspiracy to Commit Violations**
**31 U.S.C. § 3729(a)(1)(C)**

48.     Plaintiffs incorporate by reference and reallege all of the allegations contained in paragraphs 1 through 37 of this Complaint as though fully set forth herein.

49.     Defendants knowingly (as defined in 31 U.S.C. § 3729(b)(1)) conspired to commit violations of substantive portions of the False Claims Act, including but not limited to subparagraphs (A), (B), and (G) of 31 U.S.C. § 3729.

50.     Upon information and belief, Defendants conspired to: (1) knowingly present false records and statements; (2) knowingly make, use, and/or cause to be made and used false records and statements; and (3) knowingly make, use, or cause to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the Government.

51.     The conduct of Defendants violated 31 U.S.C. § 3729(a)(1)(C) and was a substantial factor in causing the United States to sustain damages in an amount according to proof.

14

### FOURTH CAUSE OF ACTION
#### (In the Alternative)
#### On Behalf of the United States
#### Federal False Claims Act, Retention of Proceeds to Which Not Entitled
#### 31 U.S.C. § 3729(a)(1)(G)

52.     Plaintiffs incorporate by reference and reallege all of the allegations contained in paragraphs 1 through 37 of this Complaint as though fully set forth herein.

53.     In the alternative, Defendants knowingly made, used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the Government.

54.     As discussed above, Defendants received far more money from the Medicare programs than it was entitled to.  Defendants knew that they had received more money than it was entitled to, and avoided their obligation to return the excess money to the Government.

55.     The conduct of Defendant violated 31 U.S.C. § 3729(a)(1)(G) and was a substantial factor in causing the United States to sustain damages in an amount according to proof.

## VIII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs by and through Relator, pray judgment in its favor and against Defendants as follows:

1.     That judgment be entered in favor of plaintiff UNITED STATES OF AMERICA ex rel. CHRIS RIEDEL, and against Defendants HEALTH DIAGNOSTIC LABORATORY, INC., BLUEWAVE HEALTHCARE CONSULTANTS, INC., and SINGULEX, INC., according to proof, as follows:

15

a.   On the First Cause of Action (Presenting False Claims (31 U.S.C. §

3729(a)(1)(A))) damages as provided by 31 U.S.C. § 3729(a)(1), in the amount

of:

i.    Triple the amount of damages sustained by the Government;

ii.   Civil penalties of Ten Thousand Dollars ($10,000.00) for each false claim;

iii.  Recovery of costs;

iv.   Pre- and post-judgment interest;

v.    Such other and further relief as the Court deems just and proper;

b.   On the Second Cause of Action (False Claims Act; Making or Using False

Records or Statements Material to Payment or Approval of False Claims (31

U.S.C. § 3729(a)(1)(B))) damages as provided by 31 U.S.C. § 3729(a)(1) in the

amount of:

i.    Triple the amount of damages sustained by the Government;

ii.   Civil penalties of Ten Thousand Dollars ($10,000.00) for each false claim;

iii.  Recovery of costs;

iv.   Pre- and post-judgment interest;

v.    Such other and further relief as the Court deems just and proper;

c.   On the Third Cause of Action (False Claims Act; Conspiracy to Commit

Violations (31 U.S.C. § 3729(a)(1)(C))) damages as provided by 31 U.S.C. §

3729(a)(1) in the amount of:

i.    Triple the amount of damages sustained by the Government;

ii.   Civil penalties of Ten Thousand Dollars ($10,000.00) for each false claim;

iii.  Recovery of costs;

16

    iv.    Pre- and post-judgment interest;

    v.    Such other and further relief as the Court deems just and proper; and

    d.    On the Fourth Cause of Action (False Claims Act, Retention of Proceeds to Which Not Entitled (31 U.S.C. § 3729(a)(1)(G))) damages as provided by 31 U.S.C. § 3729(a)(1) in the amount of:

    i.    Triple the amount of damages sustained by the Government;

    ii.    Civil penalties of Ten Thousand Dollars ($10,000.00) for each false claim;

    iii.    Recovery of costs;

    iv.    Pre- and post-judgment interest;

    v.    Such other and further relief as the Court deems just and proper.

2.    Further, Relator, on his own behalf, pursuant to 31 U.S.C. section 3730(d), requests that he receive such maximum amount as permitted by law, of the proceeds of this action or settlement of this action collected by the United States, plus an amount for reasonable expenses incurred, plus reasonable attorneys' fees and costs of this action. Relator requests that his percentage be based upon the total value recovered, including any amounts received from

/ / /

/ / /

/ / /

individuals or entities not parties to this action.

Respectfully Submitted,

DATED: December 30, 2011

**COTCHETT, PITRE & McCARTHY, LLP**          **BERK LAW PLLC**

By: _____          By: _____

NIALL P. McCARTHY                            STEVEN N. BERK
     (CA SBN 160175)                                   (DC SBN 432870)
     (to be admitted *pro hac vice*)              BERK LAW PLLC
JUSTIN T. BERGER                             2002 Massachusetts Avenue NW
     (CA SBN 250346)                              Washington, DC 20036
     (to be admitted *pro hac vice*)              Telephone:    (202) 232-7550
ERIC J. BUESCHER                             Facsimile:     (202) 232-7556
     (CA SBN 271323)                              E-Mail:        steven@berklawdc.com
     (DC bar admission pending)
COTCHETT, PITRE & McCARTHY, LLP
San Francisco Airport Office Center
840 Malcolm Road
Burlingame, California 94010
Telephone:    (650) 697-6000
Facsimile:     (650) 692-3606
E-Mail:        nmccarthy@cpmlegal.com
               jberger@cpmlegal.com
               ebuescher@cpmlegal.com

*Attorneys for Relator*                          *Attorneys for Relator*

## DEMAND FOR JURY TRIAL

Relator CHRIS RIEDEL hereby demands a jury trial on all issues so triable.

Respectfully Submitted,

DATED: December 30, 2011

**COTCHETT, PITRE & McCARTHY, LLP**                    **BERK LAW PLLC**

By: _____                    By: _____

NIALL P. McCARTHY                                  STEVEN N. BERK
    (CA SBN 160175)                                        (DC SBN 432870)
    (to be admitted *pro hac vice*)                    BERK LAW PLLC
JUSTIN T. BERGER                                   2002 Massachusetts Avenue NW
    (CA SBN 250346)                                    Washington, DC 20036
    (to be admitted *pro hac vice*)                    Telephone:    (202) 232-7550
ERIC J. BUESCHER                                   Facsimile:    (202) 232-7556
    (CA SBN 271323)                                    E-Mail:    steven@berklawdc.com
    (DC bar admission pending)
COTCHETT, PITRE & McCARTHY, LLP
San Francisco Airport Office Center
840 Malcolm Road
Burlingame, California  94010
Telephone:    (650) 697-6000
Facsimile:    (650) 692-3606
E-Mail:    nmccarthy@cpmlegal.com
        jberger@cpmlegal.com
        ebuescher@cpmlegal.com

*Attorneys for Relator*                            *Attorneys for Relator*